UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC HARRIS,

               Petitioner,

     v.                                                                    17-CV-653-LJV
                                                                              DECISION & ORDER
SUPERINTENDENT, Attica Correctional
Facility,

               Respondent.

_____


On July 14, 2017, the petitioner, Eric Harris, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Docket Item 1.  Harris was convicted in Seneca County Court of assault, arson, and reckless endangerment.  *Id.* at 2; Docket Item 12-2 at 178, 967.  His petition asserts violations of his Sixth Amendment right to effective assistance of counsel and his Fifth Amendment right to be protected from compelled self-incrimination.  Docket Item 1 at 1, 5.

For the reasons that follow, this Court denies the petitioner's request for an evidentiary hearing and denies the petition.[1]

---

[1] On November 12, 2019, this Court referred this case to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 13.  The Court now withdraws that referral and addresses the petition in the first instance.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2002, a Seneca County grand jury indicted Harris on several charges including assault, arson, and reckless endangerment.  Docket Item 1 at 2; Docket Item 12-2 at 969-72.  Those charges stemmed from allegations that in the early morning hours of May 5, 2002, Harris beat his girlfriend, Deborah Mazur, and set his house on fire with Mazur inside.  Docket Item 1 at 2; Docket Item 12-2 at 969-72.

### I.    CONFESSION

State Trooper Mark Wing, the first law enforcement officer on the scene of the fire, arrived at 8:10 a.m. and immediately encountered Harris.  Docket Item 12-3 at 25. Wing did not Mirandize Harris before asking him whether anyone was inside the house and how the fire started.  *Id.* at 25-27.  After Harris attempted to re-enter his burning house, Wing handcuffed him and had him sit in the back of Wing's patrol car.  *Id.* at 26-27.

Sometime before 9:00 a.m., with Harris still handcuffed in the back of the patrol car, New York State Police Sergeant Jose Vasquez read Harris *Miranda* warnings from a card provided by the New York State Police.[2]  *Id.* at 28-31.  According to Vasquez, Harris "was shaking his head left to right and he seemed very troubled."  *Id.* at 30. When Vasquez asked Harris whether he understood his rights, "[Harris] continued to

---

[2] The card included five notices and warnings: (1) "[you have] the right to remain silent"; (2) "anything you state can be used and will be used against you in a court of law"; (3) "you have the right to talk to a lawyer and have him present with you while you are being questioned"; (4) "if you cannot afford a lawyer, one will be appointed to represent you free of charge before any questioning continues"; and (5) "you can decide at any time to exercise these rights . . . and not answer any questions and make any statement."  Docket Item 12-3 at 504 (Vasquez trial testimony); *see id*. at 31.

nod his head left to right, but he said yes."  *Id*. at 31-32, 39.  Vasquez did not question

Harris any further because Vasquez's "concern was [Harris's] well-being at the scene."

*Id*. at 33-34.

New York State Police Investigators Edward Charles and David Gould

approached Harris just after 10:00 a.m.  *Id*. at 41-42.   Before asking any questions

about the incident, Gould asked Harris whether anyone had Mirandized him, whether he

understood his rights, and whether he was willing to talk to Gould.  *Id*. at 56, 75-76.

After Harris answered yes to each question, Harris and Gould spoke for fifteen to thirty

minutes about what happened.  *Id*. at 56-57.  Charles then escorted Harris to an

emergency vehicle where Harris exchanged the bathrobe he was wearing for a t-shirt,

sweatpants, and rubber boots.  *Id*. at 44, 57.  At about 11:15 a.m., State Police

Investigator David Stebbins drove Harris to the local police station.  *Id*. at 58, 60.

Over the next several hours, Stebbins and Gould questioned Harris.  *Id*. at 61.

Before the interview concluded, the investigators printed Harris's statement and two

addenda, and Harris drew a diagram of his home's interior—adding additional details as

the interview progressed.  *Id*. at 61-62, 67, 89-97.  After the investigators printed the first

statement, Harris read aloud the *Miranda* warnings printed at the top right, initialing

each paragraph.  *Id*. at 62-63, 87-88.  Harris also made some corrections to the

statement and initialed them, and Harris, Gould, and Stebbins all signed the statement.

*Id*. at 63-64, 88-89.[3]  The interview concluded at 4:05 p.m.  *Id*. at 69-70.

---

[3] Harris did not sign the first addendum, but he signed the second.  Docket Item
12-3 at 66-69, 94-95, 98, 100.  The addenda are also referred to as the "second portion"
and the "third portion" of Harris's statement, *see, e.g.*, *id*. at 97-100, or the "second
statement" and the "third statement," *id*. at 98-99.

During the interview, Harris told Stebbins and Gould that he hit, slapped, and pushed Mazur; threw unlit candles and a hairbrush at her; and threatened her with a knife. *Id.* at 583-87. He said that after he and Mazur argued, he "lit five candles that were lined up on the headboard" and they both went to bed. *Id*. at 585-86. Harris said that both he and Mazur fell asleep and that he awoke to see "flames coming from the sheets on [Mazur's] side of the bed." *Id.* at 586. According to Harris, Mazur awoke at about the same time, and they both "left the house as quick as [they] could." *Id.*

Later in the interview, Harris said that there was something he "forgot to say."[4] *Id*. at 587. He told the officers that after he and Mazur "got out of the fire, [he] went back into the house and took a can of kerosene and sprinkled kerosene in the house." *Id*. He said that he did that "because [he] wanted to commit suicide."[5] *Id.* But he also said that before the fire started and when Mazur was "on the bed," he had "put kerosene on her clothing . . . in the bathroom," and then "put [the clothes] near her side of the bed." *Id.* at 588. He "d[id] not know why [he] moved the clothing into the bedroom." *Id.*

Harris later said that he "want[ed] to add" that the fire started when he "intentionally knocked one of the candles off the headboard of the bed onto the pile of [Mazur's] clothing that [he] had previously put the kerosene on." *Id.* at 589. But he said that after he did this, he "woke up [Mazur]." *Id*. And he said that he never intended "to hurt [Mazur]"; rather, he "just wanted to kill [him]self." *Id.*

---

[4] Harris also said that he did not remember "everything that occurred last night." Docket Item 12-3 at 587. He said that he sometimes "black[s] out" and does things that he does not remember and that he "think[s he] blacked out" that night. *Id*. at 587-88.

[5] In fact, Harris said that he tried to shoot himself with his ".22 rifle," but the weapon apparently was not loaded. Docket Item 12-3 at 584.

When emergency medical personnel arrived, they found Mazur outside the home wrapped in a blanket.  *Id.* at 468, 686.  EMS transported her to Cayuga Medical Center where an anesthesiologist intubated her and placed her on a mechanical respirator.  *Id.* at 672, 689, 785.  Later, she was flown by helicopter to Upstate Medical Center where she was received in critical condition and eventually admitted into the intensive care unit.  *Id.* at 635, 676, 679.  Upstate Medical Center treated Mazur for "bruising and broken bones in [her] face and broken teeth," puncture wounds to her knees, and an injury to her hand that later required surgery.  *Id*. at 405-06, 791-92.

## II.    PROSECUTION

On June 21, 2002, a Seneca County grand jury indicted Harris for assault in the first degree in violation of New York Penal Law ("NYPL") § 120.10(3); arson in the second degree in violation of NYPL § 150.15; aggravated sexual abuse in the first degree in violation of NYPL § 130.70(1)(a); reckless endangerment in the first degree in violation of NYPL § 120.25; assault in the second degree in violation of NYPL § 120.05(2); and unlawful imprisonment in the first degree in violation of NYPL § 135.10. Docket Item 1 at 2; Docket Item 12-2 at 969-72.[6]

Prior to trial, the court granted Harris's request for a *Huntley* hearing to determine whether his confession was voluntary.[7]  Docket Item 12-3 at 15-17.  The law

---

[6] The charges of aggravated sexual abuse and unlawful imprisonment were later dismissed, and Harris was tried on five counts: (1) assault in the first degree; (2) arson in the second degree; (3) reckless endangerment in the first degree; (4) assault in the second degree; (5) assault in the second degree.  Docket Item 12-3 at 134, 1115-16, 1500.

[7] "In New York, a *Huntley* hearing is held if the prosecution intends to offer a defendant's confession.  If the confession is challenged, a hearing is held in which the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant's

enforcement officers with whom Harris spoke testified at the hearing.  *See id.* at 22-23.

After considering the evidence and testimony presented at the *Huntley* hearing, the trial

court ruled that Harris's statements made to Wing upon his arrival as well as the

statements that were reduced to writing were admissible.  Docket Item 12-2 at 775-779.

 Consequently, Harris's entire written statement was read to the jury at trial.

Docket Item 12-2 at 775-779; Docket Item 12-3 at 580-590.  In addition, Harris, the

officers who spoke with and questioned him, the fire investigators, Mazur, and the

physicians who treated Mazur all testified.  Docket Item 12-3 at 122-975.  After hearing

testimony from twenty-two witnesses and viewing more than eighty pieces of evidence,

the jury convicted Harris of assault in the first degree, arson in the second degree,

reckless endangerment in the first degree, and one count of assault in the second

degree.[8]  Docket Item 12-2 at 178, 967; Docket Item 12-3 at 123-25; 1115-16.  The trial

court sentenced Harris

> to serve, consecutively, an 18[-]year determinate term of imprisonment for
> the crime of assault in the first degree, and a 10[-]year determinate term of
> imprisonment for the crime of arson in the second degree, and concurrently
> a 5[-]year determinate term of imprisonment for the crime of assault in the
> second degree, and an indeterminate term of imprisonment having a
> minimum of 2-1/3 years and a maximum of 7 years for reckless
> endangerment in the first degree.

Docket Item 12-2 at 66 (capitalization removed) (responding affidavit to Harris's 440

motion); *see also id.* at 574 (appellate brief), 967 (state court judgment).

---

statement was voluntary."  *Thomas v. Lord*, 396 F. Supp. 2d 327, 335-36 (E.D.N.Y.
2005) (citing *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179
(1965)).

 [8] The jury acquitted Harris on the other count of assault in the second degree.
Docket Item 12-3 at 1116.

### III.    POST-TRIAL PROCEEDINGS

Harris challenged his conviction in a collateral proceeding under New York

Criminal Procedure Law § 440, alleging that his trial attorney was inadequate because

he ignored Harris's request to seek a handwriting expert to challenge parts of his

statements that were not signed by him.  Docket Item 12-2 at 1-6, 178.  After a hearing

in which Harris, his trial attorney, the prosecuting attorney, investigators Stebbins and

Gould, and a handwriting expert testified, Docket Item 12-3 at 1146-1489, the court

denied Harris's petition, Docket Item 12-2 at 184.

In its decision and order, *id*. at 178-184, the court credited counsel's testimony

that he did not know that Harris wanted to challenge the authenticity of signatures on his

statements to police until Harris was "actually sitting in the chair testifying as a witness

at trial," *id.* at 182.  As a result, the court discounted Harris's testimony that he told

counsel before trial that some of the signatures on the documents were not his and

needed to be examined.  *See id.* at 181-82.

The court also found the testimony of the handwriting expert who testified at the

post-trial hearing to be of "dubious value."  *Id*. at 180-81.  More specifically, the court

noted that (1) the expert's testimony "regarding which signatures were authentic varied

considerably [from] his previously prepared reports"; (2) the expert "did not remember

making one or both of the reports"; (3) the expert did not witness Harris's exemplars but

"admitted that it is important to witness the preparation of exemplars"; (4) the expert

said that "exemplars prepared after the questioned documents [were completed] should

not be used for comparison" but admitted that the document that he used "was

purportedly made by the defendant subsequent to the questioned documents"; and (5)

the expert "used photocopies" for comparison, "admitted that originals should be used if

7

possible," and did not suggest any "inability to gain access to the originals." *Id*. The court also noted the expert's testimony that mental state and physical limitations can affect a signature and observed that "[n]o evidence was presented that [the expert] was aware of the defendant's attempt to stab himself in the neck and his subsequent shackling prior to the signing of the third statement, or that he took those factors or others, such as possible fatigue, into consideration when formulating his opinion." *Id*. at 181.

Harris appealed that decision to the New York State Supreme Court, Appellate Division, Fourth Department, and the Fourth Department consolidated the appeal with others that Harris had filed. *Id*. at 213-14, 324-26, 388-89. Among the issues Harris raised in the consolidated appeal were the invalidity of his *Miranda* waiver and the ineffective assistance of trial counsel. *Id*. at 569-575. With respect to the latter, Harris argued that his attorney failed to 1) object to the duplicitous count of assault in the first degree and to reading Harris's entire statement to the jury, 2) request an intoxication jury instruction, and 3) procure a handwriting expert. *Id*.

The Fourth Department affirmed. *People v. Harris*, 129 A.D.3d 1522, 1526, 11 N.Y.S.3d 359, 365 (4th Dep't 2015). First, the Fourth Department found that Harris received *Miranda* warnings, confirmed that he understood them, and waived his right to remain silent; the court therefore concluded that "the [trial] court properly refused to suppress statements made by [Harris] at the crime scene and, subsequently, at the police station." *Id*. at 1522, 11 N.Y.S.3d at 361. The Fourth Department did not address any failure of counsel to object to the reading of Harris's entire statement at

trial, finding that the claim was not properly before the court because it was "raised for the first time" in Harris's reply brief.  *Id.* at 1525, 11 N.Y.S.3d at 364.

The court also rejected Harris's challenges to counsel's failure to object to the jury charge on assault or to request an intoxication instruction.  *Id.*, 11 N.Y.S.3d at 364. More specifically, the court found that contrary to Harris's argument on appeal, charging the jury in the disjunctive did not make the assault count duplicitous because

> [w]here an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant with having committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others.

*Id.*, 11 N.Y.S.3d at 363-64 (citations and internal quotation marks omitted).  And the court rejected any ineffective assistance claim based on the failure to request an intoxication charge "because the record [did] not contain evidence that defendant's use of intoxicants was of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent."[9]  *Id.*, 11 N.Y.S.3d at 364 (citations and internal quotation marks omitted).  Finally, the Fourth

---

[9] Detective Gould testified that when he encountered Harris "at the scene and during the course of the next five hours," he did not "detect the odor of alcohol or intoxication about him."  Docket Item 12-3 at 80.  Gould said that in his opinion, Harris "was not intoxicated at all. . . . I couldn't even tell he had been drinking the night before." *Id.* at 559-61.  Len Carlsen, who was with Harris before the incident, testified that he saw Harris drink three or four beers before they left the house and thought Harris was drinking a "little fast."  *Id.* at 444.  Harris himself testified that he remembered making a written statement that over the course of the evening, from approximately 8:00 p.m. to 1:30 a.m., he "had less than a beer, a Coors Light" and two Citron and 7-Ups, and that his statement was accurate.  *Id.* at 903-06.  He also said that his last drink was around 12:30 a.m. and that he had five to six drinks in total.  *Id.* at 925.

Department agreed with the county court's rejection of Harris's challenge to counsel's failure to procure a handwriting expert.  *Id.* at 1526, 11 N.Y.S.3d at 364.

In sum, the Fourth Department affirmed Harris's conviction, his resentencing,[10] and the denial of his § 440 motion.  *Id.* at 1522, 11 N.Y.S.3d at 361.  The New York Court of Appeals denied all applications for further review.  *See People v. Harris*, 27 N.Y.3d 998, 59 N.E.3d 1220 (2016); *People v. Harris*, 138 A.D.3d 1513, 29 N.Y.S.3d 225 (2016); *People v. Harris*, 28 N.Y.3d 1028, 68 N.E.3d 109 (2016).

Harris filed his petition in this Court on July 14, 2017.  Docket Item 1.  The respondent answered and filed a memorandum of law in opposition on September 9, 2019.  Docket Item 11; Docket Item 12.  Harris was given the opportunity to reply, Docket Item 3 at 2, but he did not do so.

## **LEGAL PRINCIPLES**

"[A] person in custody pursuant to the judgment of a State court may petition a district court for a writ of habeas corpus on the ground that [he or she] is in custody in violation of the Constitution or laws or treaties of the United States."  *Orlando v. Nassau Cnty. Dist. Att'y's Off.*, 915 F.3d 113, 120 (2d Cir. 2019) (internal quotation marks omitted) (quoting 28 U.S.C. § 2254(a)).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[10] On March 7, 2011, the Seneca County Court re-sentenced Harris to include periods of post-release supervision, as required by NYPL § 70.45. Docket Item 12-2 at 996; Docket Item 12-3 at 1494-1504.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010) (reciting the standard).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the state court decides a case with facts "materially indistinguishable from a relevant Supreme Court precedent" and reaches the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (opinion for the Court by O'Connor, J.). A state court's decision is an "unreasonable application" of clearly established federal law when the state court identifies the correct legal principle "but unreasonably applies that principle to the facts of the . . . case." *Id.* at 413. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)). "When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies

11

'beyond any possibility for fair[-]minded disagreement.'"  *Shinn v. Kayer*, 141 S. Ct. 517,

520 (2020) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

<u>**DISCUSSION**</u>

Harris contends (1) that he did not "validly and indisputably" waive his *Miranda*

rights; (2) that his trial counsel was ineffective for failing to (a) procure a handwriting

expert, (b) object to the duplicitous count of assault in the first degree, (c) request an

intoxication charge, and (d) object to the in-court reading of Harris's entire statement to

police; and (3) that his appellate counsel was ineffective for failing to argue that trial

counsel should have objected when Harris's entire statement to police was read at trial.

Docket Item 1 at 1, 5.  For the reasons that follow, each of those claims lacks merit.

**I.    *MIRANDA* WAIVER**

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), an individual who is "taken into

custody or otherwise deprived of his freedom by the authorities in any significant way

and is subjected to questioning" must

> be warned prior to any questioning that he has the right to remain silent,
> that anything he says can be used against him in a court of law, that he has
> the right to the presence of an attorney, and that if he cannot afford an
> attorney[,] one will be appointed for him prior to any questioning if he so
> desires.

*Id.* at 478-79.  Harris contends that his conviction was unconstitutionally obtained

because he "did not validly and indisputably waive his *Miranda* rights."  Docket Item 1 at

5.

Harris raised that issue on appeal, and the Fourth Department rejected it.  More

specifically, the court concluded that Harris's non-custodial statements were admissible

because he was not in custody when he made them and that his custodial statements were admissible because he was read his rights; he said that he understood and waived those rights; he nevertheless chose to speak with the police; and he never requested an attorney. *Harris*, 129 A.D.3d at 1522-24, 11 N.Y.S.3d at 361-62. This Court agrees with the Fourth Department.

First, the Fourth Department concluded that the statements Harris made to Wing before Harris was given *Miranda* warnings were admissible both because Harris was not in custody at the time and because Wing's questions—was anyone inside the house and how did the fire start—were based on a legitimate concern for public safety. *Id.* at 1522-23, 11 N.Y.S.3d at 362 (citing *People v. Doll,* 21 N.Y.S.3d 665, 670, 998 N.E.2d 384, 387 (2013)). The Supreme Court has held that noncustodial statements, *see Pennsylvania v. Muniz*, 496 U.S. 582, 604-05 (1990) (non-custodial statement about the petitioner's intoxication), and statements made to officers asking questions "reasonably prompted by a concern for the public safety," *New York v. Quarles*, 467 U.S. 649, 656 (1984) (public safety exception), may be admitted even in the absence of *Miranda* warnings. And this Court agrees with the Fourth Department that based on the record here, Harris's statements to Wing were admissible for both those reasons.

The Fourth Department also found that although Harris "did not explicitly waive his *Miranda* rights while at the crime scene or before the interview process began at the police station . . .[, he] agreed to speak with investigators after confirming that he had been issued *Miranda* warnings and understood those warnings." *Harris*, 129 A.D.3d at 1523, 11 N.Y.S.3d at 362 (citing *People v. Jones*, 120 A.D.3d 1595, 1595, 992 N.Y.S.2d 823, 824 (2014)). The Supreme Court has held that a defendant can waive his or her

13

*Miranda* rights "even absent formal or express statements of waiver." *Berghuis*, 560 U.S. at 383. Thus, "[a]n 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence," *id.* at 384 (quoting *North Carolina v. Butler*, 441 U.S. 369, 376 (1979)), as long as "the prosecution shows that a *Miranda* warning was given and that it was understood by the accused," *id.* Again, this Court agrees with the Fourth Department's conclusion that Harris waived his right to remain silent even though that waiver was not explicit.

Finally, the Fourth Department concluded that "because [Harris] was issued the *Miranda* warnings at the crime scene, reaffirmed his understanding of those warnings[,] . . . and implicitly waived those rights at the crime scene, there was no need to repeat the warnings before [he] was questioned at the station a short time later." *Harris*, 129 A.D.3d at 1524, 11 N.Y.S.3d at 363 (citing *People v. Johnson*, 20 A.D.3d 939, 939, 798 N.Y.S.2d 637, 638 (2005)). The Supreme Court has held that once Mirandized, "[p]olice are not required to rewarn suspects from time to time." *Berghuis*, 560 U.S. at 386. So this Court agrees with the Fourth Department that there was no need to repeat the warnings when Harris was questioned at the police station.

Accordingly, Harris's contention that his conviction was unconstitutionally obtained because he did not validly and indisputably waive his *Miranda* rights is meritless. Because Supreme Court precedent supports the conclusions reached by the Fourth Department, its denial of Harris's *Miranda* claim is neither contrary to nor an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). In fact, the Fourth Department's conclusions were entirely consistent with federal law, and this Court

agrees with those conclusions.  This Court therefore denies Harris's request for habeas relief based on an allegedly invalid *Miranda* waiver.

## II.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL[11]

In ground two of his petition, Harris contends that his trial attorney was ineffective when he failed to (a) retain a handwriting expert, (b) object to the duplicitous count of assault in the first degree, (c) request a jury instruction on intoxication, and (d) object at trial to the reading of Harris's entire statement to police.  Docket Item 1 at 5.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), an ineffective assistance of counsel claim "has two components."  *Id.* at 687.  "First, the defendant must show that counsel's performance was deficient."  *Id.*  "Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.*

Under the first component, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Under

---

[11] The respondent argues that because Harris failed to pursue all his claims to the highest state court, any unexhausted claims or claims that have been procedurally defaulted should be dismissed.  Docket Item 11 at 35-39.  The respondent may well be correct, *see Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) ("AEDPA requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief" (citing 28 U.S.C. § 2254(b)(1)(A))), but this Court does not reach those issues because Harris's claims are substantively meritless.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition may be justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law"); *Anderson v. Graham*, 2018 WL 1428249, at *2 (W.D.N.Y. Mar. 22, 2018) ("the Court declines to resolve the issues raised by Respondent's assertion of the defenses of non-exhaustion and procedural default, and instead proceeds directly to consideration of the merits of Petitioner's claims").

the second, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Failure to establish either component is fatal to an ineffective assistance claim. *Id.* at 697.

"[W]hile in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). On habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 101.

### A.    Failure to Retain a Handwriting Expert

The Fourth Department's conclusion that Harris was not prejudiced by the absence of testimony from a handwriting expert was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. Indeed, "the decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess." *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974) (citation omitted). And that is particularly true here, where the county court listed a host of reasons why the expert's post-trial testimony was deficient, *see* Docket Item 12-2 at 180-81; *see also supra* at 7-8, and where calling an expert may well have done more harm than good.[12]

---

[12] The facts on which the county court and, in turn, the Fourth Department, relied are supported by the record, Docket Item 12-3 at 1146-1490, and Harris does not contend otherwise, Docket Item 1. Moreover, Harris's counsel may have decided that calling a handwriting expert would unduly emphasize Harris's confessions or prompt the

Therefore, the Fourth Department's decision rejecting Harris's ineffective assistance of counsel claim based on the handwriting issue was neither contrary to nor an unreasonable application of federal law.  28 U.S.C. § 2254(d)(1)-(2).  In fact, because trial counsel's decision was a matter of strategy and because that strategic decision did not prejudice Harris, neither *Strickland* prong is satisfied.  *Strickland*, 466 U.S. at 687, 697 (failure to establish either prong is fatal to an ineffective assistance claim; a petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced him).  Harris's habeas claim that his trial attorney was ineffective for failing to call a handwriting expert is therefore denied.

### B.    Failure to Object to Duplicitous Count

Harris argues that he also was denied effective assistance of counsel when his attorney failed to object to the duplicitous count of assault in the first degree.  Docket Item 1 at 5.  The Fourth Department found that this issue was not preserved for review. *Harris*, 129 A.D.3d at 1525, 11 N.Y.S.3d at 364.  Nevertheless, the court addressed the merits and rejected Harris's argument because "[i]n charging the jury in the disjunctive, rather than in the conjunctive, the court did not amend the indictment, permit the People to change the theory of the prosecution, or render the count duplicitous."  *Id.*, 11 N.Y.S.3d at 364.  In fact, under New York law, when "an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant to have committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the

---

prosecution to remind the jury about the parts of his statement that Harris admitted signing.  Docket Item 12-3 at 890-959.

commission of the others." *Bork v. People*, 91 N.Y. 5, 13 (1883); *see also People v. Rooney*, 57 N.Y.2d 822, 823, 455 N.Y.S.2d 595, 596 (1982) ("Not every fact mentioned in an indictment is essential to establish the defendant's guilt of the crime charged, and thus it is not necessary in every case that the People prove all acts alleged in the indictment when the remaining acts alleged are sufficient to sustain a conviction."). So trial counsel's failure to object was not ineffective for a simple reason: "There can be no denial of effective assistance of trial counsel arising from counsel's failure to make a[n] . . . argument that has little or no chance of success." *Harris*, 129 A.D.3d at 1525, 11 N.Y.S.3d at 364.

Because "[f]ailure to make a meritless argument does not amount to ineffective assistance," *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (applying *Strickland*), the Fourth Department's conclusion that trial counsel was not ineffective for failing to object was neither contrary to nor an erroneous application of federal law. Indeed, it was the correct conclusion, and Harris's claim based on his counsel's failure to raise duplicity is denied.

### C.    Failure to Request an Intoxication Jury Instruction

Harris also says that his trial counsel was ineffective for failing to request an intoxication instruction. Docket Item 1 at 5. Under New York law, "[a]n intoxication charge is warranted if, viewing the evidence in the light most favorable to the defendant, 'there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis.'" *People v. Sirico*, 17 N.Y.3d 744, 745, 952 N.E.2d 1006, 1007 (2011). More specifically, a defendant may be entitled to an intoxication charge when there is evidence

18

tending to corroborate his claim of intoxication, such as the number of drinks, the period of time during which they were consumed, the lapse of time between consumption and the event at issue, whether he consumed alcohol on an empty stomach, whether his drinks were high in alcoholic content, and the specific impact of the alcohol upon his behavior or mental state.

*People v. Beaty*, 22 N.Y.3d 918, 921, 999 N.E.2d 535, 536-37 (2013) (quoting *People v. Gaines*, 83 N.Y.2d 925, 927, 615 N.Y.S.2d 309, 310 (1994)).

At trial, Gould testified that when he first spoke with Harris in the back of Wing's patrol car shortly after 10:00 a.m., he did not detect an odor of alcohol and Harris did not appear to be intoxicated—or even to have been drinking alcohol. *See* Docket Item 12-3 at 56, 513-16, 544, 559-61. Moreover, Harris himself testified that over the four-and-a-half hours from about 8:00 p.m. to 12:30 a.m., he "had less than a beer, a Coors Light," and two Citron and 7-Ups, *id.* at 903-06, perhaps a total of "five to six drinks," *id.* at 925. And no one testified that on the night before the fire Harris had consumed so much alcohol that a reasonable juror might conclude that he was unable to form the requisite criminal intent. *Id.* at 80-925. So the Fourth Department correctly "reject[ed] Harris's] contention that defense counsel was ineffective based on his failure to request an intoxication charge [because] [s]uch a charge was not warranted" in light of the evidence. *See Harris*, 129 A.D.3d at 1525, 11 N.Y.S.3d at 364. For that reason, Harris's claim based on his trial attorney's failure to request an intoxication charge is denied.

### D. Failure to Object to Reading Harris's Entire Statement to Police

Harris also argues that his trial counsel was ineffective when he failed to object to Harris's entire statement to the police being read at trial. Docket Item 1 at 5. The Fourth Department declined to address that claim because Harris raised it for the first

time in his reply brief and it therefore was not properly before the court.[13]  *Harris*, 129

A.D.3d at 1525, 11 N.Y.S.3d at 364.

Harris's habeas petition does not say why counsel should have objected to the

in-court reading of his statement to police, *see generally* Docket Item 1, and his claim

fails for that reason alone.  *See generally United States v. Zannino*, 895 F.2d 1, 17 (1st

Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal

way, leaving the court to do counsel's work, create the ossature for the argument, and

put flesh on its bones.").  In his reply brief to the Fourth Department, Harris argued that

by not objecting to reading his statement, trial counsel effectively nullified a favorable

"pre-trial ruling that . . . [Harris's] prior bad acts could not be admitted[,]" Docket Item 12-

2 at 709, and perhaps that is the argument he wants to make here.   But even if it is,

that argument fails as well.

In his Fourth Department reply brief, Harris noted that the statement read to the

jury referred to Harris's admitting that he had "pushed and slapped two other women on

prior occasions."  *Id*.  The reply brief argued that trial counsel's failure to object to that

---

[13] The Fourth Department did not resolve this claim on the merits, and the respondent argues that it therefore is unexhausted; the respondent also says that the claim is procedurally barred because it can no longer be raised in state court.  Docket Item 11 at 35-39.  But perhaps Harris did raise the issue in his initial brief on appeal: he contended that he was "deprived of his constitutional right to effective assistance of trial counsel" when his attorney "failed to object to the prosecution's reading to the jury of various incompetent statements contained in appellant's statements to the police." Docket Item 12-2 at 575.  Nevertheless, even if that adequately raised the issue before the Fourth Department, Harris never pursued it in the Court of Appeals, and he likely has not exhausted it for that reason.  28 U.S.C. § 2254(b)(1)(A) (with limited exceptions, a court shall not grant an application for a writ of habeas corpus "unless it appears that— the applicant has exhausted the remedies available in the courts of the State"); *accord Shinn*, 142 S. Ct. at 1732; *see also supra* n.11.  In any event, and as noted above, this Court does not address the exhaustion issue because Harris's claims fail on the merits.

statement being read to the jury amounted to ineffective assistance because this evidence "increased the possibility that the jury would convict [Harris] as a result of acts for which he had not been indicted." *Id.* at 710.  But those arguments are misplaced.

Following a hearing, the trial court ruled that Harris's entire written statement was admissible.  *Id.* at 634-35, 758, 775-779.  In that statement, Harris said, "I have been involved with incidents with two girls . . . . These incidents involve pushing and slapping." *Id.* at 786; Docket Item 12-3 at 588.

After ruling that the entire statement was admissible, but before trial, the court also ruled that the People could not inquire about the "nature of the events" of two prior convictions—assault in the third degree and endangerment of a child.   Docket Item 12-3 at 127-28.  More specifically, the court ruled that the prosecutor could ask only "if the defendant has also been convicted of two other misdemeanors." *Id*.  The "incidents with two girls" in Harris's statement apparently were the bases for those misdemeanor convictions. *Id.* at 588, 930, 1501.  So, Harris argued in his Fourth Department reply brief, his trial counsel was constitutionally ineffective by failing to object to reading his statement about conduct involved in his prior convictions.  Docket Item 12-2 at 709-10 (reply brief); Docket Item 12-3 at 570-71, 575, 580 (trial transcript).

*Strickland* counsels that in reviewing ineffective assistance claims, "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.  The inherent difficulties in such an evaluation dictate a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance" and place the burden on the petitioner to

"overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Harris has not met this burden here.

First, Harris did not and does not say why counsel's decision was unreasonable. For that reason alone, he has not carried the heavy burden of demonstrating that his counsel was ineffective.  *Id.* at 687.  Moreover, the entire statement had been admitted into evidence, and the snippet at issue did not violate the trial court's ruling precluding reference to the convictions because the prosecutor did not connect the misdemeanor convictions with Harris's admission that he had previously pushed and slapped "two girls."  Docket Item 12-3 at 588.  So there is no reason to believe that counsel's objection would have been sustained.

And even if all that were not true, there was no "reasonable probability" of a different result if the snippet were excluded—that is, there is no reason to believe that but for the reading of the snippet at trial, Harris would not have been convicted of assault.  *Strickland,* 466 U.S. at 694.  Indeed, the trial court instructed the jury that with respect to Harris's statement to police, under no circumstances "should [they] consider any incidents with the other female as a propensity of [Harris] to commit the crimes to which he is now charged"; the evidence against Harris was overwhelming; and it is unreasonable to think that a fleeting reference to prior incidents involving "pushing and slapping"—included in a larger statement essentially admitting the crimes charged—had any impact whatsoever on Harris's conviction.[14]  *See* Docket Item 12-3 at 1056, 1077-

---

[14] As the respondent correctly observes, "the jury acquitted [Harris] of one of the assault counts, something it would not likely have done had it acted based on

78, 1081 (jury charge).  For all those reasons, Harris's claim based on trial counsel's failure to object to the reading of his statement lacks merit and is denied.

## III.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, Harris argues that his right to effective assistance of counsel was violated when appellate counsel failed to argue that trial counsel was ineffective by failing to object to the reading of Harris's entire statement to police.  Docket Item 1 at 5.

As observed above, appellate counsel alluded to this issue in the primary brief to the Fourth Department and fully developed it only in reply.  Docket Item 12-2 at 575, 709-10.  Perhaps, in hindsight, counsel might have fully briefed the issue in the first brief.  But Harris cannot show that appellate counsel was constitutionally ineffective by focusing on some arguments at the expense of others, especially when the argument he criticizes counsel for not pursuing lacks substantive merit.[15]  *See supra* at 19-22.

Moreover, "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."  *Davila*, 137 S. Ct. at 2067.  Harris's principal brief in the Fourth Department raised four issues related to ineffective assistance of trial counsel and fully briefed two of them.  In the absence of any argument suggesting why objecting to the reading of Harris's statements was a stronger argument than those fully briefed, this Court must presume that appellate counsel simply chose to focus on what he believed to be the

_____

propensity, and not on the evidence of guilt presented at trial."  Docket Item 11 at 44 (citing Docket Item 12-3 at 1116).

[15] Indeed, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."  *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017).

stronger arguments.  Therefore, this Court cannot conclude that appellate counsel was ineffective when he focused on certain issues at the expense of others.

Harris therefore has established neither that appellate counsel performed deficiently nor that there was a reasonable probability of a better outcome had counsel fully briefed this issue in his opening appellate brief.  His claim based on the alleged ineffective assistance of appellate counsel therefore is denied.

## CONCLUSION

For the reasons stated above, Harris's petition for a writ of habeas corpus, Docket Item 1, is DENIED, and the petition is DISMISSED.  The Clerk of the Court shall close the case.

The Court certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.


SO ORDERED.


                      */s/ Lawrence J. Vilardo*
                      LAWRENCE J. VILARDO
                      UNITED STATES DISTRICT JUDGE

Dated:        March 14, 2023
                 Buffalo, New York